STATE v. CHARLES B. DeGROAT, Appellant.

Division Two, June 23, 1914.

1. **ABORTION: Sufficiency of Evidence: Contradictory.** Although the uncorroborated testimony of the prosecutrix be contradictory in some respects and opposed to human experience in others, and some of it tends to corroborate the very defense urged by defendant, yet if there is substantial evidence upon each affirmative element required by the statute to be proved,

the question of its credibility and sufficiency to sustain a conviction is for the jury.

2. **APPELLATE PRACTICE: Criminal Case: Duty of Court to Search Out Error.** In a criminal case the Supreme Court is not bound by the attitude of the State, but must itself search the record for error.

3. **ABORTION: Duty of State to Prove Exception.** The burden is on the State, in a prosecution for the "felony of abortion," to prove that the abortion was not necessary to preserve the life of the woman or that of an unborn child. But the other exceptions enumerated in the statute, namely, that the defendant is not a duly licensed physician or that said act has been advised by a duly licensed physician to be necessary to preserve the life of the woman or of an unborn child, are matters of purely affirmative defense, and the burden of proving them is on defendant. [Overruling State v. Meek, 70 Mo. 355, and pointing out that State v. Schuerman, 70 Mo. App. 518, does not announce a contrary holding.]

4. ————: ————: **Presumption.** The rule that the burden rests upon the State to prove that the production of a miscarriage was not necessary to preserve the life of the woman, is not met, where no evidence to the contrary is produced, by the presumption that such abortion was not necessary to save her life. To indulge such a presumption would be to leave out of view the presumption of innocence, which accompanies a defendant throughout the trial; and if one presumption is to be set over against another, then there is a condition that cries loudly for proof; and, besides, if there is such a thing as degrees and grades in presumptions, then the presumption of innocence is to be preferred over the other.

5. ————: **Circumstantial Evidence: To Prove Miscarriage Unnecessary: Intent.** Actual proof that the production of a miscarriage was not necessary to preserve the life of the woman, is unnecessary and usually impossible; a prima-facie case of that exception is made out by proof that the woman was in good health, or in her usual and ordinary condition of health, immediately prior to the commission upon her of the abortion charged. And that, in a way, is proof, by circumstantial evidence, of the intent with which the miscarriage is produced.

6. ————: ————: ————: **Intent: Instruction.** While the circumstantial evidence necessary to prove that the production of a miscarriage was not necessary to preserve the life of the woman is similar to that elsewhere prevailing in the law of circumstantial evidence, that is not true in the sense that the court would have to instruct, and the jury would have to find,

State v. DeGroat.

that "the facts and circumstances shown in evidence must be not only consistent with defendant's guilt, but inconsistent with every reasonable theory of his innocence." Such an instruction becomes necessary, if at all, only when defendant offers some affirmative testimony tending to show some necessity for the abortion.

7. ————: **Insufficient Evidence to Prove Miscarriage Unnecessary.** Where the prosecutrix testifies that when she went to defendant's office where the abortion was committed she "was feeling bad," that she had a napkin on at that time and removed it before she went upon his chair, and there is no other testimony that she was at that time in good health, a judgment of conviction cannot stand, since there is no proof that the production of the miscarriage was not necessary to preserve her life, but what proof there is on the point is to the contrary. Testimony that defendant (a physician) did not tell· her that the abortion was necessary to preserve her life or that of her unborn child, does not help the State's case.

Appeal from St. Louis City Circuit Court.—*Hon. William M. Kinsey,* Judge.

REVERSED AND REMANDED.

*George B. Webster* and *William J. Grodzki* for appellant.

(1) The uncorroborated testimony of the prosecuting witness is so contradictory, so at variance with the physical facts and the laws of nature, and so in conflict with the other evidence in the case, as to render it insufficient to support a conviction upon a criminal charge. (2) The State wholly failed to prove that the alleged operation was not necessary to save the life of the prosecuting witness or an unborn child, and there was no evidence of her healthy condition from which the jury might draw that inference. In such circumstances there can no conviction. State v. Sonner, 253 Mo. 440; State v. Shoemaker, 138 N. W. 381; State v. Wells, 100 Pac. 681; State v. Longstreth, 121 N. W. 1114; State v. Brown, 85 Atl. 797; State v. Lee, 37 Atl. 75; Howard v People, 57 N. E 441. (3)

The fourth instruction was erroneous in that it omitted mention of essential elements of circumstantial evidence, which will justify conviction. State v. Salmon, 216 Mo. 529; State v. Gray, 163 Mo. App. 697; State v. Moxley, 102 Mo. 374.

*John T. Barker,* Attorney-General, and *Ernest A. Green,* Assistant Attorney-General, for the State.

(1) At the close of the State's case the defendant's counsel interposed a demurrer to the evidence assigning several distinct grounds therefor. The first of these was that the State had not shown beyond a reasonable doubt that a miscarriage resulted from the treatment of Rose Ellis by this defendant. Under the statute this is not necessary. In fact, under it the woman need not even be pregnant. Sec. 4458, R. S. 1909; State v. Helton, 255 Mo. 170; State ex rel. v. Shields, 230 Mo. 91. Even if it were necessary however to establish the fact of a miscarriage in this particular case the same was abundantly established by the testimony. (2) The law would presume from the continued practice by the defendant of medicine for a period of almost twenty years that he had been duly licensed. In other words, the law presumes right action, and a wrongful act will not be presumed. Maysville v. Truex, 235 Mo. 619; Trust Co. v. Bank, 154 Mo. App. 89; State v. Bebhardt, 219 Mo. 708; State v. Schatt, 128 Mo. App. 625; Machinery Co. v. Ramlose, 210 Mo. 649. (3) The third reason assigned for the defendant's demurrer is that there was no proof that the abortion was not necessary to save the life of Rose Ellis or her unborn child. The testimony clearly shows that until this operation was performed on the prosecuting witness by the defendant her health was good. State v. Casto, 231 Mo. 408. (4) Defendant insisted that his demurrer should have been sustained because there was no proof that this

operation had not been advised by some other physician to have been necessary to save the life of the prosecuting witness. This defense is not open to a physician when charged with performing the abortion himself. State v. Gow, 235 Mo. 324.

FARIS, J.—Appellant, convicted and fined $100 in the circuit court of the city of St. Louis upon the charge of abortion, appeals.

The facts are substantially thus: One Rose Ellis, a young married woman, 24 years old, residing in St. Louis, temporarily estranged and living apart from her husband, being pregnant and having been informed, as she says, by some girl friends, that the services of defendant could be enlisted for a consideration to rid her of the unborn child, went on the 17th day of June, 1912, on a street car unaccompanied to see defendant for this purpose. She found defendant, who is a physician, residing in St. Louis and for some twenty years engaged therein practicing his profession of medicine, at his office on South Ninth street in said city, and being asked by him what she wanted, informed him that she was some two and a half months advanced in pregnancy and wanted him to perform an operation, or as she expresses it, to "open her womb." This, in consideration of an agreed fee of five dollars, defendant agreed to do, and at once without further parley proceeded to do, pausing only to convince himself of the sufficiency of her heart action by auscultation, upon the prosecuting witness's telling him that her heart hurt her, and that it had always been "kind of weak."

The details of the methods employed by defendant are unimportant so far as the legal phases of this case are concerned. Suffice it to say that by the use of certain instruments which were inserted into the womb of the witness, Rose Ellis, a present small flow of blood was produced, which culminated some few days

thereafter in a miscarriage. After the use upon the witness by the defendant of the instruments, she got up from the operating table, replaced her napkin, which she says she "had taken off before he went to work" on her, and rode alone to her aunt's home upon a street car.

Touching her prior health her testimony is, she "was feeling bad when she went down to the office" of the defendant, but she nowhere explains her condition or the nature of her ill feeling more at length, nor does it otherwise or elsewhere appear in the record, except that defendant says the witness was anaemic. Following the operation and while going on the street car to the home of her aunt with whom the witness was staying, she became ill and began to have severe hemorrhages, which illness and hemorrhages continued for some two months and until her condition became very serious if not dangerous. During this illness and these hemorrhages the miscarriage occurred. The fact of a miscarriage was sufficiently shown by another physician, Dr. Vanderbeck, who attended the prosecuting witness and treated her for hemorrhage and afterward gave testimony on the trial. Though this physician was not able to say what had caused such miscarriage, he was positive a miscarriage had happened.

The witness Rose Ellis was asked by the State on the trial, among others these questions:

"Q. Did Dr. DeGroat tell you this operation was necessary to preserve your life? A. No, sir.

"Q. Did he tell you it was necessary to perform this operation in order to preserve the life of an unborn child? A. No, sir.

"Q. Had you seen anyone before you saw Dr. DeGroat, about your condition? A. No, sir."

Upon being confronted with the defendant after his arrest she at first denied any positive knowledge of him but afterwards admitted that she knew him

259 Mo.—24

and that he had treated her. This action she explained to the police officer by saying defendant had winked and shaken his head at her and she was afraid to admit that she recognized him.

Defendant offered proof of his good character, and in contradiction of the State's contention that he had operated upon the witness Rose Ellis so as to produce an abortion on her, denied that he did anything to the woman except to examine her and to use such methods, and prescribe for her use such remedies, as would tend to stop her hemorrhages. He claims in his testimony in his own behalf in the case, that he first saw her on the 13th day of June, 1912—she says her first visit to his office was on June 17. That she came to his office, told him she was sick and asked him to perform an operation on her, inferably from the context, for the purpose of producing a miscarriage. Defendant examined her on this occasion, visually only, it seems (though the record is cloudy, and other inferences may be drawn), found her to be, as he says, pale and apparently anaemic, and therefore refused to operate on her. He was afraid to "operate" on her—afraid of her, he says. Thereupon and on his refusal, Mrs. Ellis told him she could operate on herself—that she was in the habit of operating; that she had done so before. Defendant further says that the witness came back again to see him on the 16th of June; that he then examined her with the aid of a speculum and found her suffering from hemorrhage of the womb, with decomposition indicated. He simply washed out the affected parts and prescribed certain remedies which have the effect of stopping hemorrhage. In other words, the defendant's position is that if an operation was performed on the witness by which a miscarriage was brought about, or if by any means such miscarriage was produced, he had no part therein. By broad inference his testimony indicates, without so saying in so many words, that she had herself used means to

produce an abortion upon herself. Corroborative of this theory of defendant is the admission of the woman to Dr. Upshaw that she "had taken something."

At the close of the evidence for the prosecution the defendant interposed a demurrer thereto for insufficiency to sustain the charge in the information, which demurrer being overruled, he saved his exceptions.

Among other instructions the court gave of his own motion one upon the question of intent, and the manner of making proof thereof in this sort of case. Since defendant is very strenuously objecting to this instruction, and since we are therefore, among other matters, called on to notice it, we consider it pertinent to a full understanding of the case. It is numbered four and so designated in the briefs, and is as follows:

"You are further instructed that the intent with which an act is committed may be proved by direct and positive testimony, or such intent may be inferred from all the facts and circumstances surrounding and attending the act, as shown by the evidence in the case, and the intent with which the defendant used an instrument or instruments upon the private parts or womb of said Rose Ellis, if you find that he did use it, or them, must be determined by you from the evidence given in this case."

The above facts will, we think, throw sufficient light upon the points it has become necessary to discuss as to enable the reader to follow the discussion subjoined.

Three grounds upon which a reversal is sought are urged upon us in the brief furnished us by learned counsel for defendant: (a) That the uncorroborated testimony of the prosecuting witness is contradictory and so at variance with the physical facts as to render it insufficient to support the charge; (b) that there was a failure of proof

*Assignments.*

as to the matters required by the statute to be nega-
tived, that is, as to the non-necessity of the alleged
abortion in order to save the life of the woman or
that of an unborn child, and (c) that instruction four
set out by us in the statement is erroneous in omitting
essential elements defining circumstantial evidence.
These in their order.

I.  Save for the specific charge of the insufficiency
of the testimony to sustain this conviction arising from
the alleged failure of the State to offer sufficient testi-
mony to show the non-necessity of the al-
leged abortion as a medical means of sav-
ing the life of the woman or that of an
unborn child, which we reserve for spe-
cial discussion below herein, we can see
no sufficient legal reason to sustain this general charge
of error on this ground.  We concede that the testi-
mony of the woman in the case, apparently presents
some situations opposed to the general run of ordinary
human experience.  Likewise, there are to be found in
her testimony admissions of statements made to other
persons by her which contradicted her testimony upon
the trial and corroborate the very defense urged by
the defendant.  For example, she voluntarily admitted
apropos of nothing and without being asked, that she
told Dr. Upshaw she "had taken something."  True
also it is, that at first when confronted by defendant
in the presence of the police officers she denied know-
ing him.  She also says that on her first visit to defend-
ant and before she lay down to have defendant op-
erate on her, she had removed a napkin she was wear-
ing.  To quote her words, she says, "I got up" (after
the operation) "and put on my napkin; I had taken it
off before he went to work on me."  No explanation
of this was asked by either the State or defendant,
though inferences might well arise from it, which, in a
measure, likewise bolster up the theory of the defend-

*Margin note:* Sufficiency of Evidence: When Question for Jury?

ant and corroborate his testimony. · But be this as
may be, on the affirmative elements of the case, and
reserving for the present the point of the alleged fail-
ure of the State to prove the negative of non-neces-
sity of the operation to save life, there was substan-
tial proof to take the case to the jury. The jury's
duty it was to weigh the testimony of the prosecut-
ing witness and to say whether in their judgment, with
all her contradictions she told the truth. There was
substantial evidence (though contradicted in some as-
pects and though opposed to human experience in oth-
ers and fraught with inferences leading to doubt in yet
others) upon each affirmative element required to be
proved in the case if the jury believed it, as the
sequel indicates they did, to sustain the conviction.
[State v. Maggard, 250 Mo. l. c. 341.]

II. We come now to the defendant's specific al-
legation of failure of proof. Logically we could well
have considered both of these assignments of error to-
gether. They possibly belong together, but in para-
graph one above we deal only with the
quantum of evidence required to make
out all necessary proof of the commis-
sion of the crime of abortion, except proof
of the negatives which appear in the pa-
renthetical clause of our statute defining
the "felony of abortion." To further clarify this
point we set out below this section of our statute in
full, being that on which defendant was convicted and
which reads thus (we italicise the vexing exception):

"Any person who, with intent to produce or pro-
mote a miscarriage or abortion, advises, gives, sells or
administers to a woman (whether actually pregnant or
not), or who, with such intent, procures or causes her
to take, any drug, medicine, or article or uses upon
her, or advises to or for her the use of, any instru-
ment or other method or device to produce a miscar-

*Abortion:
Exceptions
Named in
Statute:
Burden of
Proof.*

riage or abortion (*unless the same is necessary to pre-serve her life or that of an unborn child, or if such person is not a duly licensed physician, unless the said act has been advised by a duly licensed physician to be necessary for such a purpose*), shall, in the event-of the death of said woman, or any quick child, whereof she may be pregnant, being thereby occasioned, upon conviction be adjudged guilty of manslaughter in the second degree, and punished accordingly; and in case no such death ensue, such person shall be guilty of the felony of abortion, and upon conviction be punished by imprisonment in the penitentiary not less than three or more than five years, or by imprisonment in jail not exceeding one year, or by fine not exceeding one thousand dollars or by both such fine and imprison-ment; and any practitioner of medicine or surgery, up-on conviction of any such offense, as is above defined, shall be subject to have his license or authority to practice his profession as physician or surgeon in the State of Missouri revoked by the State board of health in its discretion." [Sec. 4458, R. S. 1909.]

We could well content us here by saying that the State concedes the necessity of some proof of the fact that the operation was not performed in due course of medical treatment as a necessary means of saving the life of the woman, or that of her unborn child; but the State says this requirement of proof is amply met in the record. In a criminal case we are not bound by the attitude of the State; we must ourselves comb the record for error. [Sec. 5312, R. S. 1909; State v. Maggard, 250 Mo. 335.] The language of section 4458, supra, and the condition of the law as we gather it from the adjudicated cases, would seem to suggest such treatment of the questions involved as will lay bare the existing defects, if any, and suggest a possi-ble remedy therefor.

The questions vexing us and to be determined are: (1) must the State offer proof of the negative

contained in the parenthetical exception in our statute, or, is this exception a matter of pure affirmative defense; (2) if the burden is on the State, how and by what sort of proof may that burden be met, and (3) has it been met by the State in this case?

The general rule as to the contents of an indictment which charges an offense, to which there are exceptions negativing guilt, is, that all such exceptions must be pleaded in the indictment when they occur as parts of the statutory definition of the offense, in all cases where if such exceptions be omitted, the offense cannot be accurately described. [State v. Meek, 70 Mo. 355; State v. Bockstruck, 136 Mo. l. c. 351, 1 R. C. L. 80; State v. Casto, 231 Mo. 398; State v. Longstreth, 19 N. D. 268; State v. Wells, 35 Utah, 400.] But where such exceptions are not a part of the statutory definition of the crime; where they are contained in distinct and independent clauses of the statute, or in separate sections, it is not usually necessary either to plead them or to prove them. Such exceptions are pure matters of affirmative defense. [State v. O'Brien, 74 Mo. 549; State v. Doerring, 194 Mo. 398.] There is no doubt that both by these rules and by *stare decisis,* abortion falls pursuant to the statute defining it, into the first category. [State v. Casto, supra; State v. Meek, supra.] As a general rule where the State is required to plead a negative, or to plead an excusing exception, the State must offer some proof thereof. The only exception to this rule is that where the subject-matter of a negative averment lies peculiarly within the knowledge of the other party, the averment is said to be taken as true, unless disproved by that party. [State v. Hathaway, 115 Mo. l. c. 44; State v. Lipscomb, 52 Mo. 32.] As a general thing this rule is applied only to cases where the exception required to be negatived can be so negatived beyond any question or cavil by the production of a license, e. g., to sell liquor, or of a certificate to practice medicine, or

dentistry, which license or certificate is in the custody
or control, as a matter of course, of defendant.

Two fairly logical and consistent objections can
be urged against the use of this rule in regard to the
proof of the negative of non-necessity in a case like the
instant one; (1) the danger of the conviction of an
innocent defendant from the lack of certainty of the
proof offered by him on the affirmative existence of
non-necessity (since it might, in the last analysis, re-
solve itself into a question of the weight of the oath
of defendant, laboring under the statutory ban of dis-
credit, against that of the woman in the case); and (2)
the fact that the proof to make out a prima-facie case
of non-necessity, under the weight of authority here-
after cited, does not lie wholly and peculiarly within
the knowledge of the defendant. The question of
where upon this phase lies the burden of proof is one
of very great difficulty. The courts are not in accord
upon it, in fact they are almost irreconcilable. New
York (Bradford v. People, 20 Hun, 309; People v. Mc-
Gonegal, 136 N. Y. 62; Weed v. People, 56 N. Y. 628),
Colorado (Johnson v. People, 33 Colo. 224), Texas
(State v. Rupe, 41 Tex. 33), and Kentucky (Peoples
v. Com., 87 Ky. 487), on statutes, in some cases at
least, so differing from our own as to form a logical
reason for the variance in the holding, but for the
most part, for that the defense is peculiarly within the
knowledge of the defendant, have held that no proof
by the State of the negative of non-necessity is re-
quired.. But the great weight of authority is, that the
burden rests upon the State to make prima-facie proof
of facts and circumstances from which non-necessity
may be inferred. [State v. Longstreth, 19 N. D. 268;
Hatchard v. State, 79 Wis. 357; Howard v. People, 185
Ill. 552; State v. Bly, 99 Minn. 74; State v. Aiken, 109
Iowa, 643; State v. Clements, 15 Ore. 237; Dixon v.
State, 46 Neb. 298; State v. Watson, 30 Kan. 281;
Diehl v. State, 157 Ind. 549; People v. Balkwell, 143

Cal. 259; State v. Wells, 35 Utah, 400; State v. Dargatz, 244 Mo. 218; State v. Casto, 231 Mo. 398; State v. Sonner, 253 Mo. 440.]    There is one case in this State from this court (State v. Meek, 70 Mo. l. c. 358), where it was said that the burden is upon the defendant to prove the necessity of an abortion and not upon the State to prove the non-necessity thereof.    This holding was put upon the ground that the facts were peculiarly within the knowledge of the defendant.    The case of State v. Schuerman, 70 Mo. App. 518, is usually cited as an authority for the same view that the burden is on defendant to prove the necessity of the abortion.    As a matter of fact it is an authority for the very contrary view that the burden is on the State to prove the non-necessity of the abortion.    Since these cases, which are in conflict with each other, have been ruled, the offense has been made a felony.    Besides this (and we are bound to concede that the more serious in punishment an offense is, the more care the courts should take in protecting the citizen, lest the innocent suffer harsh and degrading punishment), it is a seriously debatable question whether the prima-facie proof of non-necessity is always more within the peculiar knowledge of defendant than it is that of the prosecution; this, for the lack of definiteness and certainty of proof when matters rest on oral, instead of written, evidence, and for the reasons already pointed out, and hereafter again to be adverted to.    It was said in the case of State v. Aiken, 109 Iowa, 643 (quoting from Moody v. State, 17 Ohio St. 110), that "the circumstances attending the procurement of an abortion, tending to prove that it was unnecessary for the purpose of preserving the life of the mother, ordinarily can be shown quite as easily on the part of the prosecution as it can be proved by the defendant that it was necessary for that purpose."    This might not be true always as a general rule absolutely without exception, but having regard to the nature of the prima-facie

proof permitted, it will be seen to be generally true. So generally true it is that considerations of the danger of unwarranted conviction of an innocent citizen of a heinous offense, may well speak for the expediency of the rule.

Again it was said in the case of State v. Aiken, supra:

"There is no evidence of illicit intercourse, no showing as to whether she was married or unmarried, and nothing to indicate the condition of her health, except that she walked to the office of the defendant two or three times.  Surely, this does not prove beyond a reasonable doubt that the miscarriage was not necessary to save the life of the mother.  And we are of the opinion that it does not make out even a prima-facie case. . . .  Every presumption is in favor of defendant's innocence; and if the facts shown are capable of explanation on any reasonable hypothesis in favor of innocence, there can be no rightful conviction. There was not sufficient evidence to support the material allegations of the indictment, and defendant's motion for a new trial should have been sustained."

In the case of Moody v. State, supra, it was said:

"The circumstances attending the procurement of an abortion, tending to prove that it was unnecessary for the purpose of preserving the life of the mother, ordinarily can be shown quite as easily on the part of the prosecution, as it can be proved by the defendant that it was necessary for that purpose. . . .  The statute does not declare every procurement of an abortion to be an offense; but does so only when it is not done for the purpose of saving the life of the mother. The absence of this necessity is, then, so far descriptive of the crime, that the offense cannot be established without proof that such necessity did not exist. It is the producing an abortion in the absence of such necessity, that, upon the theory of the statute, constitutes the offense."

It is stated in 1 Cyc. 188, that "the burden of proof rests upon the State to show that the production of the miscarriage was not necessary for the purpose of saving the mother's life. *Such burden is complied with, however, where no evidence is introduced to the contrary, by the presumption that it was not necessary to save her life.*" (Italics ours.) We have examined all of the cases cited in support of the rule italicised. In our view, except as we have already referred to those cases (all of which, except two, we cite) they do not bear out the rule stated. Neither is such a rule borne out by the rule touching presumptions. The rule stated in 1 Cyc., supra, leaves out of consideration that cardinal rule as to the *presumption of innocence.* Where one presumption in law meets another as here, face to face, the occasion is meet and propitious for some proof to break the inevitable deadlock. If there be degrees and grades in presumptions, it would seem that the presumption of innocence ought to prevail over such a presumption as that invoked to eke out the rule stated in 1 Cyc., supra. We always instruct in all felonies, and in misdemeanors when requested, that "the law presumes the innocence of defendant and not his guilt; that this presumption of innocence attends and protects the defendant throughout the trial and until it is overcome by evidence which proves his guilt beyond a reasonable doubt." We are wholly unable to see the logic from which the rule in Cyc. follows. This rule as stated in Cyc. comes from State v. Lee, 37 Atl. 75, and it is plain that it does not connote either the criticism we make above, or other objections thereto ably urged against it in State v. Wells, 35 Utah, 400.

Passing this point, we conclude that by the great weight of the ruled cases, and from the logic of the case and for reasons to be deduced from rules on cognate matters, the burden is on the State to prove the non-necessity of the abortion to save the life of the

mother or the life of an unborn child. The other nega-
tives in the exception, so clearly take care of them-
selves, either in that if defendant be a physician, the
defense that the abortion was advised by a physician,
does not avail him (State v. Gow, 235 Mo. 1. c. 324),
and also, manifestly if defendant be not a physician,
but the abortion was done by defendant upon the ad-
vice of a physician, this fact, *ex necessitate,* is a pure
matter of affirmative defense, arising from the utter
impossibility of the State's making proof of it, and
arising from the knowledge of it and the name of the
physician so advising being absolutely locked in the
breast of defendant. [State v. Hathaway, supra.] The
case of State v. Meek, 70 Mo. 355, the present form of
our statute on abortion considered, should in this be-
half be no longer followed.

We reach this conclusion in full appreciation of
the possibility of miscarriages of justice under it. But
this consideration is for the Legislature and not for
us. We must construe the law as we find it and not as
we would wish it to be.

III. We next come to consider the nature of the
proof required in order to meet the burden which we
are constrained to conclude is upon the State. The
courts everywhere have recognized the utter futility of
actual proof, and have with practical unanimity held
that a prima-facie case is made out by proof of the
fact that the woman was in good health, or in her usual
and ordinary condition of health, immediately prior to
the commission upon her of the 'abortion charged.
[State v. Sonner, 253 Mo. 440; State v. Casto, 231 Mo.
398; State v. Dargatz, 244 Mo. 218; State v. Long-
streth, supra; State v. Wells, supra; Dixon v. State, 46
Neb. 298; People v. Balkwell, 143 Cal. 259; 1 R. C. L.
78.]

In the case of State v. Casto, supra, at page 408,
it was said on this point by Judge GANTT: "If the

burden was on the State to prove this negative, we think when it appeared by the uncontradicted testimony that up to the very hour Anna Bell was taken to the Stotts house, she was in perfect health, the burden then shifted to defendants to show that the abortion was necessary to preserve her life, because if such was the case and abortion had been resorted to for that purpose, the necessity was a matter peculiarly within the knowledge of defendant, and the doctor.''

Manifestly this in a way is the proof of the intent with which the miscarriage is produced, by circumstantial evidence. It has been said the phase of circumstantial evidence here involved is similar to that elsewhere prevailing in the law touching circumstantial evidence. [1 R. C. L. 78; State v. Wells, 35 Utah, 400.] This in our view is not true in the sense that the court would have to instruct and the jury would have to find, that ''the facts and circumstances shown in evidence must be not only consistent with defendant's guilt, but inconsistent with every reasonable theory of his innocence.'' Certainly, this would not be required solely upon the prima-facie case made by the State, nor until the defendant had himself offered some affirmative proof tending to show the medical necessity of the abortion produced; thus presenting an issue of fact raised by the circumstantial evidence of the State upon the one side and the countervailing proof of the defendant upon the other side. When nothing but the prima-facie case made by the State upon the point of intent as deducible from proof of an abortion committed upon the body of a healthy woman is in the case the jury might well be told to infer this intent from all of the facts and circumstances in evidence in the case bearing upon the question of intent. [State v. Alexander, 119 Mo. 447.] We find no fault with this instruction.

IV. Viewed in the light of the facts, as we set them out and in the law as we believe we find it, was there sufficient proof in the record of the intent with which defendant committed upon Rose Ellis the abortion, which she says and the jury found, he produced on her? We think not.

She says that "when she went down there she was feeling bad and she thought—" (here she was interrupted and stopped without concluding the telling of what she thought). She also says she had a napkin on when she first went to the defendant's office. Instead, therefore, of there being here present in the record proof of her antecedent good health, what meager proof there is shows the contrary. [State v. Sonner, supra.] She was asked, it is true, whether defendant told her that the abortion was necessary to preserve her life or the life of an unborn child, and she answered that defendant had not told her any such thing. That does not help this case, unless we could judicially notice, as we cannot, or unless there were proof of the fact in the record, as there is not, that physicians always and in all cases take their patients into full confidence and tell them why each medical or surgical step is taken. Upon the ground of the insufficiency of the evidence in the case to negative the non-necessity of the abortion, the demurrer to the evidence ought to have been sustained.

We have already under paragraph three indicated our views upon the criticism of defendant as to instruction No. 4, and there in effect disallow it. However, for the error noted, the case must be reversed and remanded for a new trial. Let this be done.

*Walker, P. J.,* and *Brown, J.,* concur.