Samuel U. RODGERS, M.D., et al.,
Respondents,

v.

John C. DANFORTH, Attorney General of
the State of Missouri, et al.,
Appellants,
and
Infant Doe and Guardian ad litem M. H.
Backer, Jr., M.D., Intervenor-
Appellants.

No. 57105.

Supreme Court of Missouri,
En Banc.

Oct. 3, 1972.

Rehearing Denied Nov. 13, 1972.

Frank Susman, St. Louis, Charlotte P. Thayer, Grandview, for respondents; Roy Lucas, New York City, of counsel.

John C. Danforth, Atty. Gen., Gene E. Voigts, First Asst. Atty. Gen., Jefferson City, Gene McNary, Pros. Atty., Donald J. Weyerich, First Asst. Pros. Atty., Clayton, for appellants.

Louis C. DeFeo, Jr., Jefferson City, Bernard J. Huger, Bernard C. Huger, St. Louis, for intervenor-appellants; Downey, Sullivan & Fitzgerald, Thomas M. Sullivan, Kansas City, Benjamin J. Francka, Springfield, George A. Rozier, Jefferson City, of counsel.

DONNELLY, Judge.

This case involves the question whether the following portion of V.A.M.S., § 559.-100, the Missouri "abortion" statute, is constitutional:

"Any person who, with intent to produce or promote a miscarriage or abor-

tion, advises, gives, sells or administers to a woman (whether actually pregnant or not), or who, with such intent, procures or causes her to take, any drug, medicine or article, or uses upon her, or advises to or for her the use of, any instrument or other method or device to produce a miscarriage or abortion (unless the same is necessary to preserve her life or that of an unborn child, or if such person is not a duly licensed physician, unless the said act has been advised by a duly licensed physician to be necessary for such a purpose), shall, in event of the death of said woman, or any quick child, whereof she may be pregnant, being thereby occasioned, upon conviction be adjudged guilty of manslaughter, and punished accordingly; and in case no such death ensue, such person shall be guilty of the felony of abortion, * * *."

Plaintiffs represent two classes of persons: (1) physicians who assert the statute is unconstitutionally vague and indefinite in that it provides "insufficient warning * * * of which physical or mental conditions justify interruption of pregnancy * * *"; and (2) persons who assert the statute violates rights of privacy, equal protection of the laws, due process of law, and constitutes an establishment of religion.

■ *First, as to the plaintiffs who are physicians, and their claims*: In Missouri, the burden is on the State to plead and prove that an abortion performed on a woman by a physician, accused under V. A.M.S., § 559.100, supra, is not "necessary to preserve her life or that of an unborn child * * *." State v. De Groat, 259 Mo. 364, 168 S.W. 702. We hold, under authority of United States v. Vuitch, 402 U.S. 62, 91 S.Ct. 1294, 28 L.Ed.2d 601, that the claims of vagueness asserted by the physicians are without merit.

*Second, as to the other plaintiffs and their claims, we make the following observations:*

■ (1) This Court is bound to follow the decisions of the Supreme Court of the United States. Art. VI, Constitution of the United States; Cooper v. Aaron, 358 U.S. 1, 78 S.Ct. 1401, 3 L.Ed.2d 5.

■ (2) This Court need not follow the decisions of lower federal courts. United States ex rel. Lawrence v. Woods, 7th Cir., 432 F.2d 1072, cert. denied 402 U.S. 983, 91 S.Ct. 1658, 29 L.Ed.2d 148.

(3) On June 26, 1972, the Supreme Court of the United States restored to its calendar for reargument two "abortion" cases pending before it (Roe v. Wade, D. C., 314 F.Supp. 1217; Doe v. Bolton, D.C., 319 F.Supp. 1048). This means that we must speculate in this case as to what the "supreme law of the land" will be.

(4) The issues in this case are sharply and significantly narrowed by the following facts stipulated to by the parties:

"Infant Doe, Intervenor Defendant in this case, and all other unborn children have all the qualities and attributes of adult human persons differing only in age or maturity. Medically, *human life is a continuum from conception to death.*" (Emphasis ours.)

(5) The United States Supreme Court has expressed itself on the taking of "human life" in the case of Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (decided June 29, 1972). As we read the opinions in *Furman,* supra, the Court generally expressed its disapproval of the practice of putting to death persons who, some would argue, had forfeited their right to live. We believe we must anticipate at least equal solicitude for the lives of innocents.

■ In view of the positions taken by the Justices of the United States Supreme Court in *Furman,* supra, we hold, *on the facts in this case,* that § 559.100, supra, is constitutional.

The trial court held the statute unconstitutional. The judgment of the trial court is reversed.

HENLEY, HOLMAN and MORGAN, JJ., concur.

FINCH, C. J., concurs in result in separate concurring opinion filed.

BARDGETT, J., concurs in result and concurs in concurring opinion of FINCH, C. J.

SEILER, J., dissents in separate dissenting opinion filed.

FINCH, Chief Justice (concurring).

Pending a decision by the Supreme Court of the United States in the two cases restored to its calendar for reargument, referred to in the principal opinion, I am unwilling at this time to anticipate its decision and conclude that it, in effect, will hold statutes such as ours unconstitutional. Particularly is this true in view of the stipulation by the parties to which the principal opinion makes reference. Consequently, I concur in the result reached by the principal opinion.

SEILER, Judge (dissenting).

I respectfully dissent. I submit our abortion statute is unconstitutionally vague and violates fundamental rights.

In my opinion, United States v. Vuitch, 402 U.S. 62, 91 S.Ct. 1294, 28 L.Ed.2d 601, does not solve the problem of the vagueness of the Missouri statute. As pointed out by the Florida Supreme Court in Walsingham v. State, 250 So.2d 857, 860–861, the United States Supreme Court " . . . did not determine the question of whether a provision making an exception using the term 'necessary to preserve the life of a mother' would be vague and indefinite . . ." It held only that the word "health" in the District of Columbia abortion law includes mental as well as physical health. I agree with the appraisal made by Justice Erwin in the Walsingham case, supra, 250 So.2d l. c. 864, of the Florida statute, which is substantially the same as our statute: "In sum, the statute intrudes into the area of personal liberty of women and does it crudely in vague, uncertain, archaic language."

It is not a crime in Missouri for a woman to self-abort and yet if she tries to obtain qualified medical assistance the doctor must act at his peril and the woman may very well die because the doctor cannot be certain whether the abortion was absolutely necessary. As the court said in People v. Belous, 71 Cal.2d 954, 80 Cal.Rptr. 354, 458 P.2d 194, 197–198, in holding the California abortion statute unconstitutional, ". . . 'No one may be required at peril of life, liberty or property to speculate as to the meaning of penal statutes . . .'", and "Dictionary definitions and judicial interpretations fail to provide a clear meaning for the words, 'necessary' or 'preserve' . . ."

The dissent of Judge Green in Steinberg v. Brown, (N.D.Ohio W.D.) 321 F.Supp. 741, 749–750, ably illustrates the vagueness found in our statute: ". . . I should like to set forth what I believe to be a primary example of the vagueness . . .: the suicidal patient.

"A pregnant woman informs her physician that if her pregnancy goes to term she will take her own life. Is an abortion *necessary to preserve* the life of that patient? The patient will not die from any psychological condition related to her pregnancy. Suicide is an intentional act (although, perhaps, not truly a volitional one), and the patient may not, in fact, carry out her threat. Assuming that the physician has strong and valid reasons to believe that his patient will take her own life, does this statute tell him whether he may legally terminate the pregnancy?

"There are other questions created by this statute. How imminent must the threat of death be to warrant an abortion 'to preserve life?' If permitting a pregnancy to go to term would clearly shorten the mother's life by a substantial number of years, would a physician be justified in

performing an abortion in accordance with the term 'necessary to preserve her life?' "

The Texas abortion statute has been held unconstitutional by a three judge federal court, Roe v. Wade, (N.D.Tex.) 314 F. Supp. 1217. The Texas statute, like ours, permits an abortion only to save the life of the mother. The court found that the Texas abortion statute infringed upon plaintiffs' fundamental right to choose whether to have children, that the state failed to show such infringement was necessary to support a compelling state interest, and that the Texas statute was unconstitutionally vague. All these objections apply to the Missouri statute, in my opinion.

The California case, People v. Belous, supra, sets forth the historical background of abortion statutes such as the Missouri statute. They were enacted a hundred years or more ago, when the danger to women's health from infection following any surgical procedure which entered a body cavity was so great that direct interference with her constitutional rights was justified. However, ". . . It is now safer for a woman to have a hospital therapeutic abortion during the first trimester than to bear a child." People v. Belous, supra, 71 Cal.2d 954, 80 Cal.Rptr. 354, 360, 361, 458 P.2d 1. c. 200–201. I believe that Judge Green is correct when he says in his dissent in Steinberg v. Brown, supra, 321 F.Supp. 1. c. 759, that the fatal flaw in the Ohio abortion statute (which is similar to the Missouri statute) is that ". . . it carries forward the constitutional standards of Nineteenth Century America into the complex and advanced structure of our Twentieth Century society. Such standards cannot withstand the changes created by the transition from the primitive frontier life of 1834 to the onmoving urban existence of 1970."

The majority opinion in the present case, and also the state, place much stress on the stipulation that all unborn children have all the qualities and attributes of adults and that human life is a continuum from conception to death. If the parties were to stipulate that two plus two equal five we would not consider ourselves bound by it, and I do not consider myself bound by a stipulation which purports to establish as an immutable fact that a month old embryo is the same, except for age and maturity, as an adult. Despite the stipulation it simply is not true that a month old embryo is to be treated or regarded the same as an adult. For example, the Missouri abortion statute does not treat them the same—it expressly authorizes the embryo to be sacrificed if necessary to preserve the life of the mother. We have never held that a non-viable embryo itself has any rights. We have required a live birth before allowing any recovery, Steggall v. Morris, 363 Mo. 1224, 258 S.W.2d 577; Acton v. Shields, (Mo.Sup.) 386 S.W.2d 363.

I do not believe, therefore, that this case can be disposed of on the basis of the death penalty cases, Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346, decided by the United States Supreme Court on June 29, 1972. There is a great difference between finding that the death penalty as it has been imposed in this country is unconstitutionally cruel and unusual punishment and finding that an abortion in the early stages of pregnancy is thereby an unconstitutional taking of "human life". The fact that capital punishment is unconstitutional does not answer the claim made by these plaintiffs as to violation of their rights under the 1st, 4th, 5th, 9th and 14th Amendments or disclose any compelling state interest in prohibiting abortions except where necessary to preserve the mother's life.

The relevancy, if any, of the Furman v. Georgia decision was not raised in this case and could not have been because it had not been decided when the case at bar was tried or argued. This case was argued here June 1, 1972. Furman v. Georgia was not announced until June 29, 1972. In using it as a mainstay, we arrive at a decision based on a case not briefed or

considered by the parties or the trial court and without giving the parties an opportunity to present their views on whether it applies.

From my reading of the Furman decision, I cannot say that it decides the issue before us. The majority opinion may have anticipated too much into the Furman decision. The majority opinion concedes that the United States Supreme Court has not yet decided the question as to the constitutionality of abortion statutes such as ours, pointing out that the question is now on the court's calendar. It cannot be said, with confidence, therefore, that Furman v. Georgia decides the issue, or even raises it.

In fairness to the parties and the trial court, we should at least call for additional argument and briefs on the point before we decide the case on this basis.