THE STATE v. STRONG, Appellant.

Division Two, January 23, 1900.

1. **Homicide:** MALTREATMENT OF WOUND: EVIDENCE. Where, on a trial for murder, accused has not attempted to show that the sole cause of deceased's death was the maltreatment of the wound, and not the wound itself, evidence as to whether a certain treatment was proper is inadmissible.

2. **Manslaughter in Third Degree:** SELF-DEFENSE. An instruction as to manslaughter in the third degree can not be given in conjunction with an instruction relative to self-defense, since the latter is an affirmative defense, and embraces every self-protective intention known to the law, though it extend to the taking of life.

3. **Defendant's Intention:** INSTRUCTION. An accused's testimony that he did not intend to kill deceased, though he stabbed him several times, can not be received or made the basis of an instruction.

4. **In Heat of Passion:** MUST BE DEFINED. An instruction on a trial for murder, using the words, "in heat of passion," without defining them, is erroneous.

5. **Self-Serving Testimony.** Evidence that accused, immediately after inflicting the mortal wound, went for a physician, is inadmissible, as being a self-serving act.

Appeal from Dunklin Circuit Court.—*Hon. J. L. Fort,* Judge.

REVERSED AND REMANDED.

*J. P. Tribble* for appellant.

(1)   The court erred in refusing to admit testimony tending to show that deceased died of neglect and not of the wounds inflicted.   State v. Landgraf, 95 Mo. 102; Coffman v. Com., 10 Bush. (Ky.) 495.   (2)   Instruction numbered 2 uses the term "in a heat of passion," without defining or attempting to define the meaning of the term.   It should have been defined. State v. Andrew, 76 Mo. 101.   (3)   Instruction numbered 9 given on behalf of the State is erroneous in not stating that defendant was a competent witness in his own behalf and that his wife was also a competent witness for him.   State v. McCollum, 119 Mo. 469; State v. Fairlamb, 121 Mo. 137; State v. Taylor, 134 Mo. 148.   (4)   State's instructions numbered 2, 3 and 4 each close with the following language:   "Notwithstanding you may also find and believe from the testimony that unskilled medical treatment aggravated such wound and that deceased might have recovered if greater care and skill had been employed in treating him."   Testimony to that effect had been rejected by the court at the instance of the State.   And the court had specifically held that such testimony was incompetent.   It was, therefore, improper to base an instruction, or any part of an instruction, upon that point.

That part of those instructions was erroneous as not being predicated upon any testimony in the case. State v. Degonia, 69 Mo. 485; State v. Thompson, 83 Mo. 257; State v. Tice, 90 Mo. 112; State v. Herrell, 97 Mo. 105; Gorham v. Railroad, 113 Mo. 408.

*Edward C. Crow*, Attorney-General, for the State.

(1) The court committed no error in overruling the application so far as the defendant proposed to prove that he went after medical aid by the testimony of Dr. Brown. This was evidence purely of a voluntary act of the defendant subsequent to the crime and of a wholly self-serving nature. State v. Good,132 Mo. 127; State v. Taylor, 134 Mo. 154; Underhill on Crim. Evid., 151. (2) The court did not exclude the testimony tending to show the deceased died of neglect, and not of his wounds. On the contrary the court admitted a great mass of testimony, elicited from the physicians by the counsel for the defendant in his efforts to show that lack of proper medical care caused the death of the deceased instead of the wounds. The rule that the improper action of the court in refusing to permit a witness to answer a question will not be the ground for reversal where substantially the same question was asked and answered. State v. Smith, 114 Mo. 424; State v. Sansone, 116 Mo. 13. (3) The term "heat of passion" was not used in its technical sense, but as a condition of mind contradistinguished from a "cool state of the blood." The rule is that instructions should be given in plain language and the use of technical words avoided. When technical words are used and their meaning may not be readily comprehended by unprofessional persons and it appears from the whole case made that the jury may probably misapply them to the prejudice of the defendant, they should be properly defined. State v. Scott, 109 Mo. 232. In this case the heat of passion was that occasioned at the time of the fight only. The term "heat of

passion" was not used in its technical sense and therefore it need not to have been defined.   McClain's Criminal Law, sec. 337; State v. Berkley, 109 Mo. 674.   (4)   Even if the instruction on manslaughter in the fourth degree was erroneous (which I do not concede) yet the defendant is precluded from complaining because he was convicted of manslaughter in the third degree.

SHERWOOD, J.—Indictment for murder in the second degree, trial and conviction of manslaughter in the third degree, and defendant appeals.

The difficulty which resulted in the tragedy which forms the basis of this prosecution, arose between defendant and Gastine on July the 3d, 1897, in relation to a quarrel between their boys.   Gastine died on the 17th of the same month, and the State asserts that his death resulted from wounds inflicted on him by defendant with a pocket knife.

The defendant's account of the matter as abstracted by the State, is the following:   "I am the defendant.   On July 3, 1897, a number of the neighbors had come over to my house to have dinner, and after we had dinner I lay down and went to sleep, and along in the afternoon the boys came in and was talking about a fight among the children.   Directly there was a row again among the women, and I asked what was the matter and Mr. Spaulding's boy said that Mr. Gastine's boy had whipped my boy and that Mr. Gastine would not allow him to defend himself. 'Well, I says, I just guess that is a mistake.   I says, Eph, I guess you raised a racket, and if you have I will punish you.   I went in the house and put on a pair of shoes and proceeded to the pump where Gastine was.   I asked, what is the matter with the boys.   He said, 'nothing that I know.'   I said Mr. Spaulding's boy had come and complained, and that if my boy has been imposing on your boy I want to whip him.   He shall not impose on my neighbor's children.   Gastine said there was nothing wrong with the boys.   I said, I don't know,

there must be something some way. Mr. Spaulding's big boy would not have told it. Gastine said there was nothing wrong with the boys and turned loose of the pump handle and come toward me, and as he started toward me he rolled up his shirt sleeves and said, 'Damn you, I will just whip you.' As he came I stepped back over one rail of the wooden track and he kept rushing on to me, and I picked up a stick, a limb, one end of which I pulled out of the mud. He gave a big rush at me and I hit him over the left shoulder and what went with the stick I am not able to say. He got that stick or some other stick and hit me two licks, one on the head and one on the neck, and he hit me again on the arm and then he clinched me and took hold of my throat with his left hand and his right hand hold of my neck and he said, 'I will break your damned neck,' and by this time I was off of the track working in towards the fence and I thought I was in a critical condition and he was worrying me. I took my knife from my left hip pocket with my left hand and opened it with my right hand and cut him. As soon as I could get loose from him, I tore loose and run away. I went behind a stump. He jerked a knife out of his pocket with his right hand and started towards me. He was trying to open it. I ran and got behind another stump and he was yet coming towards me and I told him to go away as I did not want to bother him. I did not think of having any difficulty with him when I went out there. I was not an able-bodied man like he was and when I struck him I aimed to check him until I could get away. I think that club you show me is the one I used on him. When I cut him he was overpowering me and it seemed no one would come and take him off and I simply cut him to get loose from him. I did not intend to kill him. Mr. Poe had told me before that recently Gastine did not like me and was going to give me trouble. He said it was on account of the cattle. When we had trouble about the cattle I went to Gastine and told him he was a good driver, but we had rules and he must live up to them. He

said all right.   I had no hard feeling toward the man at all.
The cutting happened between three and four o'clock in the
afternoon.   I got the club after I got to talking to Gastine.
I thought he would hurt me seriously if I did not cut him.
He had let loose of the pump and was advancing toward me
when I hit him.   I am not able to do physical work.   I was
superintendent.   I have stone in the bladder.   Gastine did
lots of work.   He had ordinary strength.   He loaded, un-
loaded, drove, sawed and chopped logs.   I was working for the
Laswell Milling Company at that time.   I had been in their
employ four or five years then.   I work for them now.   The
knife I had was not large; it was an average-size knife."

In many particulars defendant's testimony was corrobo-
rated by his witnesses as well as by some of those on the part of
the State.

The evidence on the part of the State while it discloses
that the knife penetrated the pleural cavity, yet did not show
that the lung was cut nor that the wounds were fatal.   Dr.
Applegate, although he at first answered that he considered the
wounds fatal, yet on cross-examination admitted that he was
just speaking of the time he saw Gastine, four days after the
stabbing when the wounds having received no medical atten-
tion whatever, were greatly inflamed.

Dr. Harrison, the coroner, who held a *post-mortem* on the
body, testified that Gastine died of blood-poisoning and that
the left lung had suppurated almost entirely away; and he
could not "tell what injury was done to the lung; it might
have been cut all to pieces, and might not have been touched
to amount to anything."

The court gave as asked by the State instructions on
murder in the second degree, manslaughter in the third degree,
in the fourth degree, self-defense, reasonable doubt, presump-
tion of innocence and good character.   It is only necessary to
quote a portion of the instructions given, as follows:

"2.   Manslaughter in the third degree for the purposes

of this trial is the killing of a human being in a heat of passion without a design to effect death, by a dangerous weapon in any case except such wherein the killing of said human being is justifiable or excusable as explained in the subsequent instructions. . . . . .

"3.    The court instructs the jury that if they believe and find from the evidence in this cause that at the county of Dunklin and State of Missouri, on July 3, 1897, defendant, John Strong, who is indicted herein as John Strawn, did willfully strike one G. W. Gastine upon the body with a knife having a blade two and one-half inches in length and that such knife was a dangerous weapon and that said blow was struck in the heat of passion without a design to effect death and the said Gastine died from the effect of said wound on July 20, 1897, in said Dunklin county, then you will find the defendant guilty of manslaughter in the third degree; notwithstanding you may also find and believe from the testimony that unskilled medical treatment aggravated such wound and that deceased might have recovered if greater care and skill had been employed in treating him."

I.    The court permitted Dr. Applegate to be asked the question whether the proper treatment of Gastine would not have been to have inserted a drainage tube in the lung cavity and have kept a constant drainage from that part of the body. This he answered in the affirmative.    Subsequently, Dr. Harrison, the coroner, was asked a similar question which, on objection by the State, he was not permitted to answer.    The same idea which refused permission to the question, finds enunciation in the latter part of instruction 3 already quoted.

On the topic thus embraced in the evidence denied and the instruction given, a learned text-writer says:    "If death ensues from a wound given in malice, but not in its nature mortal, but, which being neglected or mismanaged, the party died; this will not excuse the prisoner who gave it; but he will be held guilty of the murder, unless he can make it clearly

and certainly appear that the maltreatment of the wound, or the medicine.administered to the patient, or his own misconduct, and not the wound itself, was the sole cause of his death; for if the wound had not been given, the party had not died." [3 Greenl. on Evid. (14 Ed.), sec. 139.   See, also, 9 Am. and Eng. Ency. of Law (1 Ed.), 534, 535, et seq.]

In this case there was no attempt made, nor offer to 'show that the sole cause of Gastine's death was one of the things mentioned by Greenleaf as sufficient to accomplish the exoneration of one charged with homicide.   This being the case, there was no error in rejecting the evidence or in giving the instruction.   To the same effect, see State v. Landgraf, 95 Mo. 97.

II.   In State v. Rapp, 142 Mo. 443, we have said, quoting from a former opinion, that "self-defense is an affirmative, positive, intentional act."   If this be true, then an instruction in relation to manslaughter in the third degree should not be given in conjunction with an instruction relative to self-defense, since the latter embraces every self-protective intention known to the law, even though it embrace the taking of life.

And although defendant swears he did not intend to kill Gastine, though he stabbed him once in the arm and twice in the side, yet his testimony on this point is not to be received or made the basis of an instruction.   [State v. Nelson, 118 Mo. loc. cit. 126 et seq. and cases cited.]

This view also accords with what is said in regard to a similar instruction in regard to manslaughter in the third degree.   [State v. Pettit, 119 Mo. loc. cit. 416, which overrules State v. Talmage, 107 Mo. 543.]

The instructions should therefore have been confined, so far as concerns the grade of the offense, to grades other than that of manslaughter in the third degree.

III.   There was error in giving instruction 4, at the State's instance, because no definition was given of the words

"in a heat of passion." [State v. Andrew, 76 Mo. 101; State v. Forsythe, 89 Mo. 667; State v. Hickam, 95 Mo. loc. cit. 330.]

IV. No error occurred in the refusal to admit testimony that defendant immediately after the stabbing, went after a physician for Gastine. Such self-serving acts are inadmissible. [State v. Taylor, 134 Mo. 154, and cases cited.]

For the errors set forth we reverse the judgment and remand the cause. All concur.