THE STATE v. E. ANDERSON, Appellant.

Division Two, April 9, 1923.

1. **INFORMATION:** Technical Accuracy: Common Law Requirements. The common law prevails in this State, and therefore indictments and informations charging felonies must conform to the common-law rules of pleading, by which rigid strictness and technical accuracy are exacted, and nothing can be left to intendment or implication.   And the Legislature has done very little to relax the rigid rules of criminal pleading, but has left the common law requirements of exactitude and completeness unrelaxed, except that as to clerical errors and omissions the Statute of Jeofails has simplified them to some extent.   The result is involved and intricate pleadings of tedious prolixity and iteration in criminal cases, so that, instead of making clear what the defendant is charged with, labored expert inspection is often required to find out what they mean.

2. ———: ———: In Language of Statute.   However, the courts have simplified criminal pleadings, so far as it could be done without legislative authority under the Constitution and the prevalence of the common law, by ruling that where an offense is of statutory origin and is described by the statute, an indictment or information in the language of the statute is sufficient if the statute sets out all the elements constituting the offense.

3. ———: Abortion: In Language of Statute: Omitting Feloniously. An information which charges that the defendant, with force and arms in and upon a certain woman, did then and there wilfully, unlawfully and feloniously make an assault, and did then and

State v. Anderson.

there wilfully, unlawfully and feloniously use and employ in and upon her body and womb a certain instrument, with felonious intent then and there to promote and produce a·miscarriage and abortion, charges that the felony of abortion was feloniously committed, and is not defective in that in the subsequent clause charging that defendant "did by the means aforesaid, and in the manner aforesaid, mortally wound, infect and disease the body and womb of her" the word "feloniously" is omitted. The information containing all the essential elements set forth in the statute as constituting the crime and also the pertinent exceptions which the statute makes, in the language of the statute, is sufficient.

4. **ABORTION: Sufficient Evidence.** In view of the information in this case, charging a physician with the crime of abortion upon a woman by the use of instruments, it was necessary, in order to make out a case, to prove (a) that the defendant used an instrument upon the woman, with the intention of producing an abortion or miscarriage; (b) that such proceeding was not necessary treatment for the purpose of saving her life, and (c) that her death resulted; and the evidence is reviewed, and held sufficient to support the verdict of guilty.

5. ———: **Negative Averments.** It is necessary to prove the negative averments of the information to the effect that the instruments used upon the woman by the physician and his treatment of her were not necessary for the preservation of her life; but, it is difficult to prove such a negative, and proof that she was in good health before the treatment is sufficient to sustain the negative averments, prima-facie, and sufficient to overcome the presumption of innocence; and such proof is strengthened by the testimony of another physician that on the previous day, when he examined her, there was an irritation, produced by a catheter which the woman had used on herself, which in no wise would justify the producing of a miscarriage, and by the testimony of the defendant that he did not produce a miscarriage, and his failure to testify that a miscarriage was necessary.

6. **DYING DECLARATION: No Objection to Competency.** Where no objection was made by defendant to the production by the husband of a conversation with his deceased wife a few days prior to her death, first detailed in the absence of the jury and then repeated after the jury were recalled, that the evidence was improper and incompetent as a dying declaration, but the only objection to it was that the matter could not be proved in that way, there being eyewitnesses present, an assignment that the husband's testimony of his conversation with his wife was improperly admitted cannot be considered on appeal.

7. **ABORTION:** Instruction: Assumption of Negative Averments. An instruction in a prosecution for felonious abortion which requires the jury to "find and believe from the evidence" that the defendant committed the acts constituting the offense, "and that he," the said defendant, "was then and there a licensed physician, and not then and there intending necessary medical or surgical treatment," etc., does not assume that defendant was a licensed physician, or that he was not intending necessary medical treatment.

Appeal from Jackson Circuit Court.—*Hon. E. E. Porter-field,* Judge.

Affirmed.

*Kelly, Buchholz, Kimbrell & O'Donnell* for appellant.

(1) The indictment is fatally defective. State v. Herrell, 97 Mo. 105; State v. Gow, 235 Mo. 307. (2) The burden is on the State to prove the non-necessity of abortion to save the life of a mother or the life of an unborn child. There was not sufficient evidence to support the material allegations in the information on these essential points and defendant's motion for new trial should have been sustained. State v. DeGroat, 259 Mo. 364. (3) The court erred in giving instruction numbered 2. It was calculated to mislead and confuse the jury, and in fact the declarations of the court, when recopying the negative allegations in the information, were susceptible of the construction by the jury that the court intended to declare that the negative allegations were statements of incontrovertible and irrefutable truth and fact. State v. Steele, 226 Mo. 599. (4) It was error to admit the alleged dying declaration of deceased. State v. Colvin, 226 Mo. 446; State v. Kelleher, 224 Mo. 149; State v. Zorn, 202 Mo. 12.

*Jesse W. Barrett,* Attorney-General, and *Henry Davis,* Assistant Attorney-General, for respondent.

(1) The information is in approved form. State v. Fitzporter, 93 Mo. 392; Sherwood's Com. on the

Criminal Law of Mo., p. 63.   An information which fails
to allege that the wounding was done feloniously will
nevertheless be held good if all the issues averred are so
connected as to show the homicidal act was done felon-
iously. State v. Ferguson, 162 Mo. 672; State v. Birks, 199
Mo. 265, 271; State v. Taylor, 190 S. W. 332.   (2)   A
prima-facie case of the non-necessity of producing an
abortion in order to save the life of the child or the
mother is made out by proof of the fact that the mother
was in good health or in her usual and ordinary condi-
tion of health immediately prior to the commission upon
her of the abortion charged.   State v. De Groat, 259 Mo.
364, 380; 1 R. C. L. p. 78, sec. 14.   (3)   A declaration
made in the belief of impending dissolution is admissible
in evidence in all cases of homicide, and such a declara-
tion made by a woman who has died as a result of a
criminal operation is made so by statute.   Sec. 4034, R. S.
1919; State v. Stewart, 178 Mo. 192.   (a)   Though the
declarations of deceased were inadmissible at their first
utterance, yet after having subsequently become con-
scious that she was dying if she re-affirmed them, they
were then admissible as dying declarations.   State v.
Evans, 124 Mo. 397; State v. Garth, 164 Mo. 553, 563;
State v. Thomas, 180 S. W. 886.   (b)   The admissibility
of dying declarations is for the court to determine and
not the jury.   State v. Zorn, 202 Mo. 12; State v. Gow,
235 Mo. 307.   (c)   A part of the dying declarations con-
sisted of opinions or conclusions of the declarant.   They
were not objected to and the error in their introduction
into evidence is not available to the appellant in this
court.   (4)   Instruction 2 is in approved form.   It does
not assume that the negatives of the statute had been
proved.   State v. Aitken, 240 Mo. 254, 263; State v.
Bickel, 177 S. W. 310.

WHITE, J.—The appellant, a practising physician
in Kansas City, was tried before a jury in the Circuit
Court of Jackson County, and on May 28, 1920, was
found guilty of manslaughter in that he caused the death
of Margaret Marts in attempting to produce an abortion

upon her, in violation of Section 3239, Revised Statutes 1919.

Appellant assert that the evidence was insufficient to support a conviction, and we find it necessary to set it out at some length.

On the nineteenth day of August, 1919, Mrs. Marts gave birth to a child. Her recovery was good. The baby was fed from a bottle, and the mother's menstrual period returned in about a month. Those periods had stopped some six weeks before the time of the alleged offense, January 20, 1920. Doctor Davis, the family physician, was called and saw her on the nineteenth day of January, 1920, and made an examination because she told him that she had made some effort to produce an abortion by using a catheter upon herself. There was nothing out of normal in her condition except some irritation produced by her use of the catheter, and a slight enlargement of the womb which he decided to be caused by pregnancy. Her health was good and she needed no treatment except such as he administered in douches.

In order to ease the woman's mind he told her that she was not pregnant, and explained that he was attempting to get her mind away from her morbid purpose to produce a miscarriage. He was called again on the twenty-fourth—five days later—and found her condition serious. At Dr. Davis's first call Mrs. Marts told him that if he would not relieve her she would find someone who would; that she would rather die than go through childbirth again. When he returned on the twenty-fourth he found her in bed with an offensive odor and emitting blood and pus. He found from examination that some violence had been done to the womb, and infection had ensued. He treated her for the trouble; she was afterwards taken to the hospital, was brought home again, and died February 15, 1920.

It appears from the uncontradicted evidence that Mrs. Marts called upon Dr. Anderson on the afternoon of the nineteenth, after Dr. Davis's first visit. He made no examination of her, but made an engagement with her to call at her house the next day, about noon, and

instructed her about preparations for what was termed an operation.

Mrs. Mattie Wallace testified that she was at the home of her sister, Mrs. Blythe, on the twentieth of January when Mrs. Marts called by telephone and asked to have Mrs. Blythe come to Mrs. Mart's house, stating that she was going to be chloroformed. Mrs. Blythe and Mrs. Wallace accordingly went to the home of Mrs. Marts. Dr. Anderson was there, also a colored woman by the name of Ida Bush. They found Mrs. Marts in bed; the defendant was in the kitchen fixing tools to operate on her. Dr. Anderson sent the colored woman out with a prescription for chloroform. Mrs. Blythe remained out of the room, because she was herself in a delicate con·dition, but Mrs. Wallace assisted in the administration of chloroform. The witness did not notice particularly what was done; she noticed that the doctor used two instruments, one of which appeared to be a speculum, and the other was about a foot long resembling scissors. The operation lasted about fifteen minutes. Dr. Anderson used water and used cotton, and as the doctor was leaving, the witness mentions this conversation:

"She asked him—said, 'Now what time will this pass?' He says, 'That will be all right about four or five o'clock.' But what it was she didn't say."

This conversation occurred between twelve and· one o'clock. Mrs. Marts then told Mrs. Blythe to call up Mr. Marts and tell him that she had been operated upon and was getting along all right. The witness further said that she did not know what the instruments were used for; she didn't know whether the physician was cutting her or just washing her out.

In a dying statement to which Mr. Marts testified, Mrs. Marts two or three days before her death told him she could live only a few days longer, she had given up all hope of recovery; that Dr. Anderson had lied to her and that she was going to die on account of it; he told her the operation would not be very severe and that she would be sick only three or four days; she was sorry she went over there. And at that time she told her husband

what she wanted done in reference to taking care of her children.

Dr. J. S. Snider conducted an autopsy on the body of Mrs. Marts February fifteenth, and found that she died of septic poisoning. He found the placenta or after-birth in the uterus, and it was the decomposition of the placenta which caused the death, and this followed an abortion. This physician said that while an afterbirth might remain for a good while after the birth of a child, it could hardly have remained from the birth of the child in August; that she could not have become pregnant again with the placenta present. He testified from his examination at the autopsy that a miscarriage had been performed by means of an instrument; that the opening in the cervix was too large to have been made with a catheter.

Dr. Davis testified that his opinion on his examination January twenty-fourth was that she had been pregnant and an abortion had been performed.

The defendant testified on his own behalf that Mrs. Marts called to see him on the nineteenth of January and made an engagement with him to come to her home and make an examination on the twentieth. She gave her name as Mrs. Crooks, told him that she was two months advanced in pregnancy, and told him about buying an instrument in a drug store which she had used without success for the purpose of producing an abortion. He treated her for the infection which ensued from the injuries, which, he inferred, had been inflicted by herself. He testified that all he did for her was proper treatment in such cases; he went to see her the next day. He said that he used no instrument that would be injurious. He said further that Mr. Marts tried to collect five hundred dollars from him, assaulted him and choked him; he said at the time he first visited Mrs. Marts he used chloroform at her suggestion and not because he thought it necessary.

Defendant further introduced testimony to show that he had a good reputation as a practising physician, and for truth and veracity and honesty. He also in-

troduced evidence to show that the treatment of Mrs. Marts by the defendant, as described by the defendant, was the proper treatment.

Ida Bush, the colored girl, testified she was present at the time of the alleged operation, described the instruments which she saw and said she boiled the water for sterilizing them, but she was sent out of the room; they told her she was too young and wouldn't understand things.

Mrs. Stella Blythe, a witness for the State, corroborated the statements of her sister, Mrs. Wallace, mentioned above. She described the incidents very much the same as Mrs. Wallace had done.

Dr. Coffey testified for the State. He was present at the autopsy. He found that the woman had been pregnant and had had a miscarriage, and a large amount of afterbirth remained in the uterus, and she died of blood poisoning following the dissolution of the afterbirth. The cervix was dilated by some instrument, or stretched when the foetus was expelled. Asked if the afterbirth which caused the death could have followed the birth of a child six months before, he said it was impossible; that a recent miscarriage caused the trouble, and a catheter would not dilate the cervix in the manner in which he found it.

On this evidence the jury found the defendant guilty and assessed his punishment at a fine of five hundred dollars.

I. The information was attacked by the motion in arrest on the ground that it did not charge the homicidal act was done feloniously, and thereby failed to charge a crime. The information is as follows:

"Now comes Hunt C. Moore, Prosecuting Attorney for the State of Missouri, in and for the body of the County of Jackson, and upon his oath informs the court that E. Anderson, whose Christian name in full is unknown to said prosecuting attorney, late of the county aforesaid, on the 20th day of January, 1920, at the County of Jackson, State of Missouri, with force and arms in and

upon one Margaret Ann Marts, then and there wilfully, unlawfully and feloniously did make an assault, and did then and there wilfully, unlawfully and feloniously use and employ in and upon the body and womb of the said Margaret Ann Marts a certain instrument or instruments, (the exact nature and description of which is to said prosecuting attorney unknown), and did then and there wilfully and feloniously thrust and force said instrument or instruments into the private parts and womb of the said Margaret Ann Marts, with the felonious intent then and there to promote and produce a miscarriage and abortion upon and to the person of the said Margaret Ann Marts; he, the said E. Anderson, being then and there a licensed physician and then and there not intending necessary medical or surgical treatment, and not being then and there engaged in any act necessary to preserve the life of the said Margaret Ann Marts, or that of an unborn child, and not then and there intending any injury other than the destruction of pregnancy, did by the means aforesaid, and in the manner aforesaid, mortally wound, infect and disease the body and womb of the said Margaret Ann Marts, in consequence of which she was made and became mortally sick and of which mortal sickness on the 15th day of February, 1920, at the County of Jackson and State of Missouri, she, the said Margaret Ann Marts, did die; and so the prosecuting attorney aforesaid, upon his oath aforesaid, does say that the said E. Anderson her, the said Margaret Ann Marts, at the county and state aforesaid, in the manner and by the means aforesaid, unlawfully, wilfully and feloniously did kill and murder; against the peace and dignity of the State.''

The point is that the allegation of the information which says the defendant did ''mortally wound, infect and disease the body'' etc., is not alleged to have been done ''feloniously'' or ''with felonious intent'' or other words used which describe that the wound was feloniously inflicted. The appellant invokes the rule of common law pleading in relation to this matter.

Since the common law prevails in this jurisdiction, indictments and informations charging felonies must conform to the common law rules of pleading by which great strictness and technical accuracy are exacted. [State v. Cline, 264 Mo. 416, l. c. 418.] Nothing can be left to intendment or implication. [State v. Birks, 199 Mo. 272; State v. Brown, 168 Mo. l. c. 454; State v. Timeus, 232 Mo. l. c. 184.] The Legislature has done very little to relax the rigid rules in criminal pleading. The Statute of Jeofails (Sec. 3908, R. S. 1919), simplifies criminal pleadings to some extent in regard to clerical errors and omissions, but leaves the common law requirements of exactitude and completeness unrelaxed.

The Constitution requires that in criminal prosecutions the accused shall have the right "to demand the nature and cause of the accusation"—almost identically the same language used in the Federal Constitution.

Involved and intricate pleadings in criminal cases have prevailed and have received the approval of the courts, not because an indictment of that kind conveys to a defendant more clearly the nature of the charge which he must meet, but because such a pleading must be proof against the assaults of astute attorneys. It must be so framed in definiteness, precision and completeness of statement that the most ingenious counsel cannot find a flaw in its purport, either logical or grammatical. The result is tedious prolixity and iteration so that instead of making clear what the defendant is charged with, labored expert inspection is often required to find out what it means.

The courts of this State, however, have simplified criminal pleading, as far as it could be done without legislative authority under the Constitution and the prevalence of the common law. Where an offense is of statutory origin, described by the statute, an indictment or information in the language of the statute is sufficient where the statute sets out all the elements constituting the offense. [State v. McWilliams, 267 Mo. l. c. 449; State v. Perrigin, 258 Mo. l. c. 236; State v. Moten, 276 Mo. l. c. 357.]

Now the offense in the present case is statutory. Section 3239, Revised Statutes 1919, declares that:

"Any person who, with intent to produce or promote a miscarriage . . . administers to a woman . . . or who with such intent . . . uses upon her . . . any instrument . . . to produce a miscarriage or abortion (unless the same is necessary to preserve her life or that of an unborn child, or if such person is not a duly licensed physician, unless the said act has been advised by a duly licensed physician to be necessary for such a purpose), shall, in the event of the death of said woman, or any quick child, whereof she may be pregnant, being thereby occasioned, upon conviction shall be adjudged guilty of manslaughter, and punished accordingly; and in case no such death ensue, such person shall be guilty of the felony of abortion."

The crime defined in the statute is the intent on the part of the accused to promote a miscarriage and the use of an instrument with that intent. The information is this case charges with sufficient directness that the defendant, Anderson, with force and arms did wilfully, unlawfully and feloniously make an assault upon Margaret Ann Marts, and did wilfully, feloniously and unlawfully use and employ an instrument in the manner condemned by the statute, with the felonious intent to produce a miscarriage and as a result thereof Margaret Ann Marts became mortally sick and died. A crime is complete whether death ensue or not. The nature of the offense is determined by the result. If no death ensue it is abortion, and if death does ensue either to the woman or to the unborn child it is manslaughter. It is not necessary to allege that any wound was inflicted upon the woman.

Also, the information continuing says that the defendant did by the means aforesaid and in the manner aforesaid mortally wound, etc. "By the means aforesaid" of course was the use of the instrument: "in the manner aforesaid" can mean nothing else than the felonious intent with which the instrument was used. It is absurd to say that by this information the defendant

State v. Anderson.

was not apprised of the charge which he was called upon to meet.

An indictment in the case of State v. Fitzporter, 93 Mo. 390, was in almost the exact language of the information in this case, except that it did not contain the negative averment that the defendant was a licensed physician and the act was not necessary to save the life of the woman nor necessary for medical or surgical treatment. The indictment was held bad because it lacked this negative averment, and not because it did not sufficiently charge that the acts of the defendant were feloniously done.

An indictment charging the offense of abortion under this section appears in full, in the case of State ex rel. v. Shields, 230 Mo. l. c. 96-98, except that in that case no death ensued and the indictment simply stops where the present indictment continues to state the consequences of the act. That indictment was held good. [See also State v. Conley, 255 Mo. l. c. 194-5-6; State v. Taylor, 190 S. W. l. c. 332.]

The case of State v. Dargatz, 244 Mo. 218, l. c. 224, contains an information charging the defendant with a like crime and in almost the same language as used here, except that it does not allege that the instrument produced a wound upon the woman whose death ensued from its use; that information was held to be good.

The information in this case is sufficient.

II. The appellant claims that the evidence is insufficient to support the material allegations of the information.

In making out a case it was necessary to prove that the defendant, Dr. Anderson, (a) used an instrument upon Mrs. Marts, with the intention of producing an abortion; and (b) that such a proceeding was not necessary treatment for the purpose of saving her life; and (c) death results.

*Sufficient Evidence.*

As to the first proposition, Dr. Anderson stoutly denied that he performed any operation with the intention mentioned; that his intention and his treatment were

entirely for the purpose of relieving the woman from the effects of injury which she had inflicted upon herself. The testimony for the State shows that when she went to him on the nineteenth he made no examination to find out whether she needed treatment of any kind, but then and there arranged to have helpers present at her home the next day for the purpose of performing an "opertion." The unskilled witnesses who testified to that evidently got that idea from what Mrs. Marts had told them of his instructions. On the next day, at the appointed time, he appeared and made preparations and used instruments the nature and purpose of which the witnesses did not know. Afterwards Mrs. Marts had a miscarriage. Just when it occurred, whether that day or later, the evidence is not clear, but that it did occur is sufficiently proved by the testimony of the physicians who examined her and those who performed the autopsy. There was evidence tending to show that the abortion was produced by the use of an instrument to dilate the cervix in a manner which the use of a catheter could not have accomplished. Two physicians testified that the instrument which the woman was said to have used upon herself was entirely insufficient to produce the result which they found at the autopsy.

It was further shown that the afterbirth which caused the blood poisoning, and the consequent death of the woman, could not have been retained from the birth of the child six months before. The evidence is very convincing that the woman was pregnant, and that a miscarriage was produced some time after the visit of Dr. Anderson to her, and that such miscarriage was the cause of her death. Taking into consideration the urgent desire of Mrs. Marts to produce a miscarriage, the refusal of Dr. Davis to assist her in that matter, her calling at the office of Dr. Anderson who was unknown to her before, for that very purpose, the evidence was sufficient to submit the issue to the jury whether the defendant did in fact use an instrument for the purpose charged.

III.  It was also necessary, of course, for the State to approve the negative averments of the information to the effect that the proceeding which Dr. Anderson undertook was not necessary for the preservation of the woman's life.  This court has considered that question in several cases and discussed the difficulty of proving a ·negative of that character.  Proof that the woman affected was in· good health before the treatment, has been held sufficient, prima-facie, to sustain the negative averments, and sufficient to overcome the presumption of innocence which attends every one charged with a crime until proven guilty where the other necessary facts are proven.  [State v. DeGroat, 259 Mo. l. c. 380-81; State v. Dargatz, 244 Mo. l. c. 225-6; State v. Casto, 231 Mo. l. c. 408; State v. Sooner, 253 Mo. l. c. 446.]

*Negative Averments.*

In this case the evidence offered by the State shows that Mrs. Marts was in good health on the nineteenth of January when Dr. Davis was called to see ·her.  There was nothing the matter with her which would justify producing a miscarriage.  She had attempted some violence upon herself, but without any serious result at that time; Dr. Davis describes it as merely an irritation.  That taken with the evidence of other physicians that the abortion was caused by the use of an instrument different from the one which she is said to have used upon herself would indicate that at that time there was no necessity of resorting to such measures in order to save her life.  Dr. Anderson testified that he treated her with a view to curing the trouble with which she was suffering at the time she came to him, and that he did not attempt to produce a miscarriage; he nowhere testified that such a course was necessary in order to save her life.  There is no evidence whatever in the record which indicates the necessity of such course, and the evidence was entirely sufficient from which the jury might very well find that the production of the abortion was not necessary.

The issue of fact at the trial didn't turn upon that question.  The defendant claimed all the time that he had no agency in producing the result.  The issue of fact all

through the trial was not whether an abortion was produced, or was necessary, but whether the defendant, or Mrs. Marts herself, was the cause of it; and, as we have seen, the evidence was sufficient to submit to the jury that issue.

IV.  Appellant assigns error to the admission by the court in evidence of the alleged dying statement of Mrs. Marts.  Mrs. Marts died at her home on the fifteenth day of February.  She talked to her husband before she was taken to the hospital on the twenty-fourth or twenty-fifth of January, in which she made statements to him about expecting to die, and explained the nature of the operation upon her by Dr. Anderson.  After she returned from the hospital she had another talk with her husband, and this was detailed to the jury as follows:

**Dying Declaration.**

"Q.  And what did she say about her expectation of recovery, and what she thought would be the result of her sickness?  A.  She told me she could not live but a few days longer.  That she could not stand it much longer.

"Q.  Did she say whether she had given up hope of recovery?  A.  Yes sir.

"Q.  Nothing further could be done?  A.  She said there is no use any more because I can't live.

"Q.  Then in that conversation at that time what did she say about Dr. Anderson, the defendant?  What he did to her, and all about it, in that conversation?  A. In that conversation she said that Dr. Anderson lied to me, and says, I am going to die on account of it.  She says, he told me that that operation would not be severe, and I would only be sick three or four days and I would be all right, but, she says, I am going to die and she says, he is to blame for it.  She says, I am awfully sorry I went over there.

"Q.  She told you about going to his office?  A. Yes sir.

"Q.  You understood what she told you?  A.  Yes sir.

"Q.   Now what did she say in this conversation, or did she say anything in the conversation as to what happened out at the house on the 20th of January?

"MR. KIMBRELL:   I object to that as a matter not to be proved in that way.   There were three eye-witnesses to it.

"THE COURT:   Objection overruled.

"To which ruling and action of the court the defendant then and there at the time duly excepted and still excepts.

"A.   Well, she told me that,—I don't remember in that conversation or not, whether she told me about what Dr. Anderson had done, any further than what I have stated a little while ago.   But she had told me all about what had been done before that.

"Q.   What did she say about what request she had made of him at that time, or what he said to her?

"MR. KIMBRELL:   I object to that question as leading and suggestive.

"MR. LEE:   I don't want to lead or suggest to the witness.

"Q.   Just state any and everything that she said in that conversation, as far as you can recall.   Get her exact words as near as you can, or the substance of it if you can't remember the exact words.

"THE COURT:   You mean on the occasion she talked to you about dying?   A.   The last time.

"Q.   Yes, two or three days before death.

"MR. KIMBRELL:   What she said about Dr. Anderson and the work he had done.

"A.   She said Dr. Anderson told her it was only a slight operation and wouldn't amount to anything, and she would only be sick three or four days, and she would be up and doing her work.   She says, he is the cause of this and I am sorry I ever went over there, but it is too late now."

The witness gave further details of the conversation with his wife and the only objections offered were the following:

"MR. KIMBRELL: I object to that as calling for a conclusion of the witness. The facts speak for themselves. . . .

"MR. KIMBRELL: I object to that for the reason that a dying statement, if it is admitted as such for what it is worth, must be confined to the description of the matter attending the death, and not as to family disposition."

It will be noted by this excerpt from the record that while several objections were made to the testimony only one exception is noted, and that is where the witness was asked as to what happened at the house on the 20th of January. The objection was not to the incompetence of the dying statement; the objection was that the matter could not be proved in that way. Besides, the witness 'didn't state what his wife said in relation to what occurred on that day, but referred to something that was stated a while before, evidently referring to something he had stated in the absence of the jury. No fact injurious to the defendant was elicited. Before this evidence of Mr. Marts was offered, the jury was excused and Mr. Marts taken over the several conversations he had with his wife beginning with January 20th, before she went to the hospital. He stated at that time what she said about expecting to die and her desire that he should take care of the children. She explained to him fully about what Dr. Anderson had told her as to the character of the operation and the kind of an instrument which he used. After all that evidence was detailed in the presence of the defendant's counsel, who interpolated remarks from time to time, the jury was recalled and the last conversation related as above. No objection was made by the defendant to the production of the conversation either before or after the jury was recalled that the evidence was improper as a dying statement.

So, even if the dying statement were incompetent, which we do not concede, no proper objection to it was made on that ground.

V.   Complaint is made of instruction numbered 2, given for the State, which is as follows:

"2.   The court instructs the jury that if they find and believe from the evidence in this case that at the County of Jackson and State of Missouri, at any time within three years next before the 23rd day of April, 1920, the date of filing the information in this case, the defendant E. Anderson with force and arms in and upon one Margaret Ann Marts then and there willfully, unlawfully and feloniously did make an assault and did then and there willfully, unlawfully and feloniously use and employ in and upon the body and womb of the said Margaret Ann Marts a certain instrument or instruments, and did then and there willfully and feloniously thrust and force said instrument or instruments into the private parts and womb of the said Margaret Ann Marts, with the felonious intent then and there to promote and produce a miscarriage and abortion upon and to the person of the said Margaret Ann Marts, and that he, the said E. Anderson was then and there a licensed physician, and not then and there intending necessary medical or surgical treatment and not being then and there engaged in any act necessary to preserve the life of the said Margaret Ann Marts or that of an unborn child, and not then and there intending any injury other than the destruction of pregnancy, and did by the means aforesaid and in the manner aforesaid, mortally wound, infect and disease the body and womb of the said Margaret Ann Marts, and in consequence of which she was made and became mortally sick and of which mortal sickness, on the 15th day of February, 1920, at the County of Jackson and State of Missouri, she, the said Margaret Ann Marts, did die, then you will find the defendant E. Anderson guilty of manslaughter as charged in the information, and assess his punishment at imprisonment in the State Penitentiary for a term not less than two years and not more than ten years, or by imprisonment in the county jail not less than six months nor more than twelve months, or by a fine not less than $500, or by

both a fine not less than $100 and imprisonment in the county jail not less than three months.

"Feloniously as used in this instruction, means wickedly and against the admonition of the law; unlawfully."

The objection urged by the appellant is that the negative averments in the information under this instruction would be understood by the jury to be statements of incontrovertible facts. That is, the statement that Dr. Anderson was a licensed physician and was not intending necessary medical treatment were facts assumed by the court in the instruction, and the jury was not required to find such facts from the evidence.

Appellant cites the case of State v. Steele, 226 Mo. 583, l. c. 593-597, a case of obtaining property by false pretenses. The instruction complained of there covers about four full printed pages, and after stating what it was necessary for the jury to find as to the representations made by the defendant, then begins a sentence in this form, l. c. 596: "Whereas, in truth and in fact said W. J. Cole was not a reliable, responsible and solvent person; whereas, in truth and in fact," etc., setting out what were the real facts in the case in contradistinction to what was represented. Those facts are set out as a direct statement of fact detached from the rest of the instruction in punctuation and in construction, without any requirement of the jury to find them to be true.

In the present case the jury were instructed that if they "find and believe from the evidence" a number of things which it is charged the said Anderson did, then proceeds: *"and that he* the said E. Anderson was then and there a licensed physician, and not then and there intending necessary medical or surgical treatment," etc. All that is connected with the first part of the instruction by the conjunctice phrase "and that he" which binds it to the first part of the instruction, requiring the jury to find the facts. It was not possible for the jury to misunderstand this instruction in such a way that they would think it unnecessary to find and believe Anderson was a licensed physician, and that the treatment was not necessary for the preservation of the life of Margaret

Marts.  The instruction is long enough as it is, and to meet the objection of the appellant would extend it to greater length and make it more obscure instead of more clear in its statement of what it was necessary to find. Grammatically and logically it is strictly correct and could not mislead the jury.

Finding no error in the record the judgment is affirmed.  All concur.