THE STATE v. A. J. DECKER, Appellant.—104 S. W. (2d) 307.

Division Two, April 21, 1937.

*Dearmont, Spradling & Dalton* for appellant.

*Roy McKittrick,* Attorney General, and *Covell R. Hewitt,* Assistant Attorney General, for respondent.

BOHLING, C.—A. J. Decker, a licensed physician, was found guilty of manslaughter arising out of the death of Dolores Alberta McMullin (nee Coats) occasioned by the production of an abortion, and his punishment assessed at two years' imprisonment. He appeals.

Defendant asserts the information attempted to charge the defendant both as a physician and as a layman and charges two distinct offenses. Section 3991, Revised Statutes 1929 (Mo. Stat. Ann., p. 2797), in so far as involved in the instant issue, makes it an offense for one intentionally to produce a miscarriage or abortion ". . . unless the same is necessary to preserve her [the pregnant woman's] life or that of an unborn child, or if such person [the accused] is not a duly licensed physician, unless the said act has been advised by a duly licensed physician to be necessary for such purpose. . . ." The information set forth the necessary negative averments as follows: ". . . the same not being then and there necessary to preserve the life of the said pregnant woman, to-wit, the said Dolores Alberta McMullin, and the same not being then and there necessary to preserve the life of an unborn child, *and the said act not being then and there advised by a duly licensed physician to be necessary for that purpose,* and the said act and acts were done by the said A. J. Decker, who was then and there a duly licensed physician, with intent. . . ." The information follows in substance the information held good in State v. Goodson, 299 Mo. 321, 324, 328, 252 S. W. 389, 391(3). The defenses available to a physician procuring an abortion are that the act was necessary to preserve the life of the mother or the life of the unborn child; whereas a layman has available the additional defense th ʿ said act was advised by a duly licensed physician to be necessary to preserve the life of the mother or of the unborn child. The information charged only that offense designated "manslaughter" by said

Section 3991, and is not subject to attack on the ground it charged two distinct offenses. The italicized portion of the information is an unnecessary allegation or evidentiary fact when the accused is informed against as a duly licensed physician, and, in such cases, may be omitted. [See State v. Hawkins (Mo.), 210 S. W. 4, 6(2); State v. Gow, 235 Mo. 307, 314, 322 (I), 138 S. W. 648, 652(1-3); State v. Anderson, 298 Mo. 382, 389(I), 250 S. W. 68, 70(I).] We think the information well enough but could, with propriety, be amended in the instant case.

The State established, among other facts, the following:

▪ Miss Coats was a student at the State Teachers College at Cape Girardeau, Missouri. She and one Herbert McMullin were married December 23, 1934; and she continued with her studies, desiring to become a teacher and aid her husband financially. Mrs. McMullin became pregnant the latter part of January or the early part of February, 1935. Mr. McMullin testified that on April 12, 1935, he met defendant on the street and asked him if it would be safe to operate on a woman to relieve pregnancy, and defendant stated "it was safe any time, any period, as long as you had some one who knew how to do it," and, asked if he would do it, told McMullin to come to his office and he would talk to him; that about a week later he went to defendant's office, which was maintained in connection with his home at Kelso, Missouri, and, during the conversation, defendant informed him his fee was $50, and, when McMullin stated he wanted exceptionally good care taken of the patient, a fee of $60 was agreed upon; that defendant stated he generally performed such operati· at his home because his wife was a practical nurse and could help him; that they should come prepared to stay three or four days, if necessary, so he could watch and care for the patient; that he would like to examine the patient that he might know the situation and cautioned McMullin about disclosing the matter to others as he, defendant, did not want other people to know about it. It appears that previously Mr. and Mrs. McMullin had consulted two other physicians in that vicinity concerning Mrs. McMullin's condition. Mr. McMullin further testified that about nine P. M. Sunday, April 21, Mrs. McMullin and he went to defendant's home; that, upon introducing Mrs. McMullin, defendant stated it was unusual for a man to bring his wife; that defendant examined Mrs. McMullin and informed witness that his wife was in excellent health, and should be able to stand the operation as well as other girls who had been there; that arrangements were made for their return the following day; that after Mrs. McMullin attended school on Mᵒ⁾ they returned to defendant's; that witness paid defendant $48.02 (part thereof being an endorsed check for $43.02); that defendant proceeded with the operation in the presence of witness and Mrs. Decker; that defendant removed the fetus, or part of it, piece by

piece, and upon completion of the operation defendant said he wasn't sure he had gotten it all; that medicated gauze was used to pack the patient; that defendant said if he had not removed all the matter, it would probably come out when he removed the gauze and if it did not he would have to remove it; that the operation lasted about an hour and a half; that when witness asked defendant if they could take Mrs. McMullin to a hospital, defendant told him the hospital would not accept her; that witness remained with his wife throughout the night, went to work on Tuesday, and returned to his wife after work; that after one A. M. Wednesday his wife became worse and witness was worried; that about 4:30 A. M. an ambulance was secured to take Mrs. McMullin to a hospital; that defendant cautioned witness not to say what was wrong with his wife, that he was the doctor and would take care of everything; and that Mrs. McMullin died Wednesday morning, about three hours after reaching the hospital.

There was testimony that Mrs. McMullin, while roller skating one day in early March, had fallen on a lawn. She immediately went about her work and studies; and there was an abundance of testimony that she was in good health up to the time of the operation.

The State also offered in evidence a certified copy of the death certificate signed by Dr. Decker stating the principal cause of death was: "Abortion about March 15. Abortion incompleted followed by peritonitis."

Defendant contends the State did not make a submissible case in that there was no sufficient showing of the non-necessity of the operation under Section 3991, Revised Statutes 1929 (Mo. Stat. Ann., p. 2797), to preserve the life of Mrs. McMullin and that her death resulted directly and proximately from the acts of defendant.

Speaking to the *quantum* of the evidence essential to establish the negative facts mentioned in said Section 3991, supra, this court in State v. DeGroat, 259 Mo. 364, 380 (III), 168 S. W. 702 707(7), said: "The courts everywhere have recognized the utter futility of actual proof, and have with practical unanimity held that a prima-facie case is made out by proof of the fact that the woman was in good health, or in her usual and ordinary condition of health, immediately prior to the commission upon her of the abortion charged." For mature women to be able to bear children is the usual course of nature and the necessity of an abortion or miscarriage to save the life of the mother (or child) is the exception. In view of the abundant testimony that deceased was in excellent health, attending to her household duties and studies daily, the negotiations and conversations had with defendant and testified to by McMullin, the statement attributable to defendant at the time of the examination that deceased was in excellent health and could stand the operation, and all the attending facts and circumstances in evidence in the instant

case, the State sufficiently established the non-necessity of the operation to save the life of the mother and also made a case for the jury on defendant's criminal liability, notwithstanding defendant's testimony from the stand that he had been employed to take care of a miscarriage which was in progress, that the history given defendant of Mrs. McMullin's fall indicated it was of a much more serious nature than detailed by eyewitnesses; that his examination of deceased disclosed evidences of an infection and she was in the process of having a miscarriage, and the statement in the death certificate that the principal cause of her death was: "Abortion about March 15. Abortion incompleted followed by peritonitis." [Consult State v. Stapp, 246 Mo. 338, 340(I), 151 S. W. 971, 972(I).]

■ Defendant attacks Instruction No. 1. After requiring the jury to find certain facts beyond a reasonable doubt and that defendant willfully, etc., did use, etc., in and upon the body and womb of deceased certain instruments, and willfully, etc., did thrust and force said instruments into the womb, etc., of deceased, it reads: ". . . with intent then and there to promote and produce a miscarriage and abortion upon and to the person of Dolores Alberta McMullin, *the same not being then and there necessary to preserve the life of the said pregnant woman, the said Dolores Alberta McMullin, or that of an unborn child,* and if you further find. . . ."

Under the decisions of this court the burden of establishing the non-necessity of the abortion to save the life of the mother or of the unborn child rests upon the State. [State v. DeGroat, 259 Mo. 364, 379, 168 S. W. 702, 705(5, 6); State v. Smith, 336 Mo. 126, 128(I), 76 S. W. (2d) 1077, 1078(1).] The State cites, among others, the DeGroat and Hawkins cases, supra, to the effect, as hereinbefore pointed out, that the State's evidence sufficiently established the non-necessity of the operation; and contends [citing State v. Anderson, 298 Mo. 382, 399, 250 S. W. 68, 74(4)] the jury must have understood the instruction to require a finding that the abortion was not necessary to preserve the life of the mother, etc. That portion of the instruction questioned in the Anderson case was connected with the requirement that the jury find certain facts from the evidence with the conjunctive phrase "and that he." The instant instruction contains no such connective. Under it the jury were required to find acts constituting an abortion and their commission with intent to produce an abortion, but the acts constituting the abortion and required to be found by the jury are characterized by the instruction (or at least it is susceptible of such construction) as not necessary to preserve the life of the mother or the life of the unborn child; whereas the statute expressly excepts from criminal responsibility the doing of said acts when necessary to preserve the life of the mother or the unborn child. Defendant's evidence, if believed, in the instant case warranted a finding by the jury that the

operation was within the express exceptions set forth in the statute; and the instruction should have as specifically required a finding of these negative facts as the finding of any other fact essential to a conviction. The discussion of the approved instruction in State v. Johnson (Mo.), 246 S. W. 894, 896(4), does not cover the issue presented on this appeal. ■ An instruction, evidently undertaking to inform the jury if they found the facts as hypothesized in the State's main instruction, was to the further effect that if they further found that deceased or her husband requested, etc., the abortion be brought about, such request, etc., would not constitute any defense, ''and cannot be considered by the jury in making up their verdict.'' Defendant asserts the quoted phrase precluded the jury from considering such testimony in connection with the credibility of the witness McMullin. The State informs us such an instruction was given and not criticized in State v. Hawkins (Mo.), 210 S. W. 4, which case, upon examination, we find [l. c. 7(6)] did not undertake to review the instructions. While consent to, desire for or request of a criminal abortion would not constitute a defense [1 C. J. S., p. 319, sec. 7; 1 C. J., p. 316, sec. 21, n. 79], the jury is privileged to consider such facts in reaching their verdict. The instruction should be redrafted.

■ Complaint is made that the court refused to permit defendant to answer an inquiry as to whether or not he introduced any infection or disease into the deceased at the time of the operation. There was no contention that defendant knowingly or intentionally caused any infection or disease or the death of deceased. We think the question, as framed, did not call for evidentiary facts but a conclusion of the witness irrespective of the facts in evidence. ■ Complaint is also made that the court excluded testimony covering the treatment administered deceased by defendant subsequent to the operation and prior to her death. There is no offer of proof and we are in no position to pass upon the admissibility of what defendant might have testified to. Some testimony of this nature that was admitted was self-serving and some was rather argumentative on the part of the witness. [See State v. Strong, 153 Mo. 548, 55 S. W. 78.]

■ We are in general accord with the abstract propositions contended for by defendant, under one point, that it is error to permit an expert witness to answer hypothetical questions not based upon facts proven in evidence [State v. Pfeiffer, 277 Mo. 202, 211(IV), 209 S. W. 925, 928(8)], and, under another point, that requested instructions D, E, F and G, should have been given if they correctly declared the law and were based on evidence tending to establish defendant's theory of the case [State v. Bartley, 337 Mo. 229, 236(4-6), 84 S. W. (2d) 637, 640(4-9)], subject to reservations which need not be mentioned. Defendant does not develop the points in

his brief, and we do not feel called upon to develop them in detail. We see no occasion for error in connection with hypothetical questions based upon the State's theory of the case and the facts adduced in support thereof upon a retrial. From a reading of the instructions we are of opinion the theories of defendant embodied in the refused instructions were sufficiently covered by the given instructions.

The judgment is reversed and the cause remanded. *Cooley* and *Westhues, CC.,* concur.

PER CURIAM:—The foregoing opinion by BOHLING, C., is adopted as the opinion of the court. All the judges concur.