STATE of Missouri, Respondent,

v.

George Washington GRAPPER, Appellant.

No. 47228.

Supreme Court of Missouri,

Division No. 2.

Oct. 12, 1959.

Rehearing Denied Nov. 9, 1959.

Thomas M. Gioia, St. Louis, for appellant.

John M. Dalton, Atty. Gen., John W. Inglish, Asst. Atty. Gen., for respondent.

EAGER, Judge.

Defendant was convicted of robbery with a dangerous and deadly weapon, and of a prior felony; he was sentenced to life imprisonment, in accordance with the verdict. He was represented at the trial and is represented here by appointed counsel. Since only one point is briefed, we need not state the facts in detail.

The State's evidence tended to show the following: that on January 22, 1957, in the City of St. Louis, defendant entered a small restaurant at 4900 Easton Avenue, threatened the proprietress with a butcher knife (she being alone), tied her hands, robbed the cash register and a drawer of approximately $100, and then proceeded to untie the victim and have intercourse with her in a back room under circumstances which would certainly indicate rape. The evidence of the latter phase of the occurrences came in without objection. Defendant was arrested on February 15, 1957. He was positively identified by the victim, and three city detectives testified that he admitted these acts in detail when confronted by the prosecutrix. The defendant testified that he did not remember any such occurrences, though he was able to give and did give many details of his past life for years prior thereto. His defense was insanity. On March 18, 1957, he was sent to the Malcolm Bliss Hospital in St. Louis for psychiatric evaluation, and its entire record was received in evidence. That record contained certain findings and notations indicating "mental deficiency," some "evidence of schizophrenic thinking," and an expressed opinion in a letter from an Assistant Resident Physician that the defendant did not "know right from wrong" at the time of the crime. There was a suggestion of malingering in other parts of the record. The entire court file of a previous criminal charge and trial was offered by defendant and admitted in evidence, without objection; this showed that on April 10, 1957, he was found not guilty of a charge of rape solely by reason of insanity, and that the jury there found that he had not "entirely and permanently recovered." That crime was charged to have been committed on January 21, 1957, one day before the present offense, and that trial was held approximately a year before the present trial.

On May 25, 1957, defendant was committed to State Hospital No. 1 at Fulton pursuant to the finding above and the order of the trial court. The record of a staff conference there on June 13, 1957, stated that there were then "no findings that justify a diagnosis in the psychiatric field. His intellectual capacity seems to far exceed that described by the Bliss Psychiatric Hospital as being under 50" (I. Q.). That report is a part of the present transcript. Dr. Val Satterfield, a specialist in mental diseases with eminent qualifications, he being also a consultant to State Hospital No. 1 on the criminally insane, testified for the State in rebuttal at the present trial. He had formally examined defendant at the hospital on June 13 and October 3, 1957, and he had observed him about the hospital at various other times. He testified without objection that he found no evidence of mental disease present. When asked whether, from his examination and observation, he had an opinion "based upon reasonable medical certainty as to whether or not a mental disease was present in January 1957," he stated that he had, and when asked for that opinion, stated that defendant "was not insane." Defendant's counsel objected to the first of these questions on the ground that no foundation had been laid for such an opinion. This witness also stated, without objection, that in his opinion defendant had full mental capacity and that there was no evidence indicating insanity. Defendant's counsel cross-examined the witness on the nature of schizophrenia and its duration or permanency. As indicated, the jury rejected the defense of insanity.

■ The only point briefed here is that the court erred in permitting Dr. Satterfield to state his opinion that defendant was sane on January 22, 1957, "in response to a hypothetical question which was not based upon the facts in evidence according to the state's theory of the case." This is not the same objection made at the trial, but, under these circumstances, we shall consider the point as briefed here. The specific objection made at the trial has not been preserved and will not be considered. Counsel cites cases to the general effect that a hypothetical question must be based upon the facts in evidence. State v. Brown, 181 Mo. 192, 79 S.W. 1111; State v. Decker, 340 Mo. 972, 104 S.W.2d 307; State v. Francies, Mo., 295 S.W.2d 8. But, since it is clear that a party may frame his hypothetical question upon his own theory and evidence, and since such a question need not include all the relevant facts in evidence (Francies, supra; State v. Sapp, 356 Mo. 705, 203 S.W.2d 425) counsel further suggests that certain omitted facts were "as much" a part of the State's theory as they were of defendant's. These were: that a physician at the Bliss Hospital had "diagnosed" defendant as not knowing "right from wrong" and as "having some degree of schizophrenia"; and that the jury in the previous case had found defendant not guilty "because of his insanity." Counsel thus insists that those facts should have been incorporated into the question. Those evidentiary matters were offered by the defendant and received as parts of his case. In fact, the State objected to the offer of the Bliss Hospital record. We doubt that legally these exhibits may be considered to be any part of the State's theory or case; only the broad theory of jurisprudence charging the State, generally, with seeing that full and complete justice is done in every criminal case might suggest such a view. But we need not decide the point here. We hold that this question was not a hypothetical question. Such a question is one by which, upon an assumed statement of facts or hypothe-sis, the witness is asked for his opinion. Webster (International Dictionary, 2nd Ed.) defines hypothesis as: "A proposition, condition, or principle which is assumed, perhaps without belief, in order to draw out its logical consequences and by this method to test its accord with facts which are known or may be determined." Dr. Satterfield was asked solely for an opinion based upon his own knowledge of defendant's condition in June 1957 and thereafter. Nothing was assumed and no hypothesis was attempted to be laid. Whether the doctor had, and could state, an opinion of defendant's condition in January 1957 from his own examination and observations, was a medical question, not a legal one. The validity and weight of that opinion, when stated, was for the jury, and his answer was subject to cross-examination. It has been held that the pertinent facts in evidence need not be incorporated into questions which merely require expert witnesses to testify "directly from their own knowledge * * *." Millirons v. Mo. & Kan. Inter. Ry. Co., 176 Mo.App. 39, 162 S.W. 1069, 1072. Expert witnesses have been allowed a wide range in testifying whether or not insanity is permanent, and to its duration. That principle has a direct analogy here. It is most common for physicians who have examined a decedent at some reasonable related time to testify that he was sane or insane at the time of executing a will. In State v. Meyers, 99 Mo. 107, 121–122, 12 S.W. 516, it was held that it was proper to ask whether a certain form of insanity, existing at a specific date, would have continued for a period of a year thereafter. And see, generally, Sanderson v. New York Life Ins. Co., 239 Mo.App. 688, 194 S.W.2d 221, 226. The court here admitted every possible bit of evidence offered by defendant to prove his claimed insanity. The jury simply declined to sustain the defense, and proceeded in direct opposition to the verdict of the prior jury. There was no error in admitting this evidence.

No error appears in the record matters which we are required to consider. The judgment will therefore be affirmed. It is so ordered.

All concur.